# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

JOHN LEWIS MILLS, #198973,  )
a/k/a JOHN L. MILLS,  )
                             )   CIVIL ACTION NO. 9:15-654-TMC-BM
          Petitioner,  )
                             )
v.  )   **REPORT AND RECOMMENDATION**
                             )
WARDEN LIEBER CORR. INST.,  )
                             )
         Respondent.  )
_____)

Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed <u>pro</u> <u>se</u> on February 6, 2015.[1]

The Respondent filed a return and motion for summary judgment on June 17, 2015. As the Petitioner is proceeding <u>pro se</u>, a <u>Roseboro</u> order was filed on June 19, 2015, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. Petitioner filed a response in opposition on July 29, 2015.

This matter is now before the Court for disposition.[2]

---

[1] Filing date per <u>Houston v. Lack</u>, 487 U.S. 266, 270-276 (1988).

[2] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c) and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



1

## **Procedural History**

Petitioner was indicted in Greenville County in October 2004 for armed robbery [Indictment No. 04-GS-23-7756]. (R.pp. 386-387). Petitioner was represented by Patrick Mangrum, Esquire, and after a jury trial on March 15-16, 2006, he was found guilty as charged. (R.pp. 1-277). Petitioner was sentenced to twenty-two (22) years inprisonment. (R.p. 283).

Petitioner filed a direct appeal in which he was represented by Kathrine H. Hudgins, Appellate Defender with the South Carolina Commission on Indigent Defense. Counsel raised the following issues:

> **Ground One:** Did the trial judge err in refusing to exclude statements made in the course of plea negotiations?

> **Ground Two:** Did the trial judge err in refusing the exclude statements obtained in violation of the Fifth Amendment right against self incrimination?

> **Ground Three:** Did the trial judge err in refusing to exclude statements obtained in violation of the Fifth Amendment right to speak to counsel?

See Court Docket No. 18-3, p. 4.

On January 8, 2009, the South Carolina Court of Appeals entered its order dismissing the direct appeal; (R.pp. 410-411); following which Petitioner filed a petition for rehearing dated January 22, 2009. See Court Docket No. 18-5. On February 25, 2009, the South Carolina Court of Appeals denied the petition for rehearing. See Court Docket No. 18-6. Petitioner then filed an appeal to the South Carolina Supreme Court, but on May 27, 2009, Petitioner's counsel wrote the Clerk of the South Carolina Supreme Court to inform the Court that Petitioner had decided to withdraw his appeal, attaching Petitioner's affidavit setting forth the same. See Court Docket No. 18-7. See also (R.p. 412). The South Carolina Supreme Court then dismissed Petitioner's appeal on May 28, 2009.



(R.p. 413). The remittitur was issued on June 1, 2009. <u>See</u> Court Docket No. 18-8.

On July 14, 2009, Petitioner filed an application for post-conviction relief ("APCR")

in state circuit court; <u>Mills v. State of South Carolina</u>, No. 2009-CP-23-5810; raising the following

issues:

**Ground One**: Ineffective Assistance of Counsel.

(R.pp. 284, 286).

Petitioner was represented in his APCR by Dwight C. Moore, Esquire, and an evidentiary hearing was

held on Petitioner's application on November 9, 2011. (R.pp. 294-361). In an order dated January

4, 2012 (filed January 9, 2012), the PCR judge denied relief on the APCR in its entirety. (R.pp. 363-

371). On January 23, 2012, Petitioner filed a motion to alter or amend judgment; (R.pp. 372-377);

and in an order filed on February 8, 2012 (dated February 7, 2012), the PCR court denied Petitioner's

motion to alter or amend judgment. (R.pp. 381-382).

Petitioner then filed a timely appeal of the PCR court's order. Petitioner continued

to be represented on appeal by Mr. Moore, who raised the following issues:

**Ground One:** Did the PCR court err in holding that counsel was not deficient in finding:

A. That Counsel conducted a proper investigation.

B. That Counsel was thoroughly competent in his representation.

**Ground Two:** The PCR court erred in holding Petitioner was not prejudiced by counsel's representation.

<u>See</u> Court Docket No. 18-10, p. 3.

Respondent filed a Return dated January 29, 2013, to which Petitioner filed a reply memorandum

dated February 8, 2013. <u>See</u> Court Docket Nos. 18-11 and 18-12. On July 3, 2014, the South

3



Carolina Court of Appeals denied Petitioner's writ of certiorari. See Court Docket No. 18-14. The Remittitur was sent down on July 23, 2014. See Court Docket No. 18-15.

        In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issue:

        **Ground One:** Ineffective Assistance of Counsel/ Failure to Investigate.

        **Ground Two:** Denial of Fair and Impartial Trial/ All White Jury.

See Petition, p. 5 .

## Discussion

        Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Fed.R.Civ.P; see Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a pro se litigant to allow the development of a potentially meritorious case; See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

## I.

### (Ground One)

        In Ground One of his Petition, Petitioner contends that his counsel was ineffective. The PCR court order addressed Petitioner's claim of ineffective assistance of trial counsel due to



counsel's failure to investigate and properly prepare his defense, as well as the issue of whether Petitioner's counsel was ineffective for failing to object to the all white composition of his jury.[3] Petitioner had the burden of proving the allegations in his PCR petition, as well as on appeal to the South Carolina Court of Appeals. Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986); see also See Court Docket No. 18-2. However, the PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended. See Mills v. State of South Carolina, No. 09-CP-23-5810.

Specifically, the PCR judge found that: 1) Petitioner testified that he had two attorneys relieved of their representation before trial counsel was appointed; 2) Petitioner stated that he had one meeting with trial counsel about this charge and that trial counsel also represented him on an unrelated murder charge; 3) Petitioner stated that he told trial counsel that he was not guilty; 4) Petitioner stated that trial counsel told him the case was going to trial but did not show him any of the discovery material or tell him the identity of the State witnesses; 5) Petitioner stated he did not learn of the contents of any of the discovery materials until trial; 6) Petitioner stated his mother provided names of witnesses to trial counsel but he did not contact them; 7) Petitioner stated trial counsel failed to investigate the circumstances surrounding when Detective Bruce said he had received a call from him; 8) Petitioner stated trial counsel failed to investigate the victims or State witnesses; 9) Petitioner stated he was concerned his jury was composed entirely of Caucasians;

10) trial counsel confirmed that he was Petitioner's third attorney; 11) trial counsel

---

[3]Although Petitioner did not raise this issue as an ineffective assistance of counsel claim in Ground One of his federal habeas petition, it is unclear from his response as to whether he may have intended to do so. Therefore, in light of Petitioner's pro se status, and out of an abundance of caution, the undersigned is addressing it, since a claim on the underlying merits of this claim as presented in Petitioner's Ground Two is procedurally barred. See discussion, infra.



testified that he filed discovery motions and received the discovery materials "fairly quickly"; 12) trial counsel testified he met with the Petitioner at least twice at the jail; 13) trial counsel testified that he and the Petitioner reviewed the discovery materials and Petitioner's version of events; 14) trial counsel confirmed that he also represented the Petitioner on a murder charge but that they had had meetings specifically about the armed robbery charge; 15) trial counsel testified, however, that Petitioner usually wanted to spend those meetings discussing the murder charge; 16) trial counsel testified he and the Petitioner discussed the fact that the victim identified him in a photographic lineup and that the Petitioner had called Detective Bruce as well as the impact this evidence would have at trial; 17) trial counsel testified that his trial strategy was to argue that the victims named the Petitioner as the assailant in order to get revenge for an unsuccessful drug deal with him; 18) trial counsel testified he made the strategic decision not to present a defense case at trial; 19) trial counsel testified that he discussed trial strategy decisions with the Petitioner; 20) trial counsel testified that Petitioner never provided him with names or addresses of potential witnesses; 21) trial counsel testified that while Petitioner told him "there was a guy" who could be helpful, he could not locate this person; 22) trial counsel testified that there was no reason to have made a <u>Batson</u>[4] motion in this case; 23) trial counsel testified that the issue of whether Alvin Martin had given a written statement came up suddenly at trial; 24) trial counsel testified that the issue was resolved to his satisfaction; 25) trial counsel testified that he made a strategic decision not to move for a mistrial because of the Martin issue, because he felt this "shattered" Martin's credibility; 26) trial counsel testified that he was prepared for trial and there was nothing else he could have done in preparation;

27) Petitioner's testimony was not credible; 28) trial counsel's testimony was credible;

---

[4] <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986).

6



29) trial counsel adequately conferred with the Petitioner, conducted a proper investigation, and was thoroughly competent in his representation; 30) Petitioner failed to meet his burden of proving trial counsel did not adequately meet with him to discuss the case and evidence before trial; 31) trial counsel testified he discussed the facts and evidence of this case with the Petitioner; 32) trial counsel testified they also reviewed Petitioner's version of events; 33) trial counsel testified he discussed potential problems with the case with the Petitioner - including that he had essentially confessed to Detective Bruce and that one of the victims had identified him in a photographic lineup; 34) trial counsel testified that he discussed the defense strategy with Petitioner prior to trial; 35) the Court noted trial counsel represented Petitioner on both this charge and an unrelated murder charge, and found he had several meetings with Petitioner about these charges; 36) trial counsel adequately prepared the case for trial and reviewed the case with the Petitioner; 37) Petitioner failed to present any compelling evidence that his trial was prejudiced as the result of inadequate preparation by trial counsel;

38) Petitioner failed to meet his burden of proving trial counsel was ineffective in failing to investigate potential defense witnesses; 39) as these alleged witnesses did not testify at the evidentiary hearing, any discussion regarding what they would have testified about at trial was purely speculative; 40) Petitioner failed to meet his burden of proving trial counsel should have more thoroughly investigated his case and, in particular, investigated the victims and State witnesses; 41) Petitioner failed to present any evidence that, if it had been discovered by trial counsel, would have changed the outcome of the trial; 42) Petitioner failed to meet his burden of proving trial counsel should have made a Batson motion at trial; 43) there was no dispute at the PCR hearing that Petitioner's jury was composed entirely of Caucasians; 44) after the jury selection, the trial judge



asked both parties if they had any motions to make regarding the jury selection and composition; 45) trial counsel stated he had no such motions; 46) the trial judge found "that the selection process complied with all statutory requirements in <u>Batson verses Kentucky</u> and <u>JUV [sic] versus Alabama</u>"; 47) Petitioner has failed to present any reason upon which trial counsel could have based an argument that any of the State's strikes were discriminatory;

48) Petitioner failed to meet his burden of proving trial counsel should have moved for a mistrial following Alvin Martin's testimony; 49) Alvin Martin was a victim/witness in this case; 50) Martin identified the Petitioner in court as the perpetrator of the armed robbery; 51) during Martin's testimony on re-cross examination by trial counsel, he stated he had given a prior written statement to the solicitor's office; 52) trial counsel objected and stated neither he nor the assistant solicitor was aware of such a statement; 53) at an *in camera* hearing, Martin testified he came to the courthouse and was told to give a statement, which he wrote and signed on yellow paper; 54) the original assistant solicitor for this case, Mark Moyer, testified he did not take the statement in this case (and had never take a written statement over the course of his career) but did take notes of a conversation with the victim/witness; 55) the parties and trial judge concluded that Martin was merely mistaken and that no written statement had been taken by the solicitor's office in this case; 56) in light of the fact that Moyer later testified before the jury on this issue, it was not incumbent upon trial counsel to have moved for a mistrial; 57) Petitioner did not show error or prejudice with regard to this issue;

58) victim James Owens identified Petitioner in a photographic lineup and Detective Bruce testified Petitioner called him and essentially confessed to the crime; 59) trial counsel articulated a valid strategy not to seek a mistrial (because he was able to attack Martin's credibility);



60) Petitioner failed to prove that his trial counsel did not render reasonably effective assistance of counsel under prevailing professional norms; 61) Petitioner failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Petitioner; 62) Petitioner failed to prove that he was prejudiced by trial counsel's performance; 63) as to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in the PCR Court's order, Petitioner failed to present any evidence regarding such allegations; and 64) Petitioner waived such allegations and failed to meet his burden of proof. (R.pp. 365-370).

Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland, 466 U.S. at 698; Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied,



114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)).  Nevertheless, with regard to Petitioner's ineffective assistance of counsel claims which were adjudicated on the merits by the South Carolina state court(s), this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495 (2000).  See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"].  Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694.  In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective.  First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment.  Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial.  In order to show prejudice a Defendant must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.



Mazzell v. Evatt, 88 F.3d 263, 269 (4th Cir. 1996). For the reasons set forth and discussed hereinbelow, Petitioner has failed to meet his burden of showing that his counsel was ineffective under this standard. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

The record reflects that Petitioner testified at the PCR hearing that when his trial counsel was appointed that it was a few weeks before his trial. (R.pp. 327-328). Petitioner testified that counsel did not bring the Brady material with him when they initially met and did not discuss Petitioner's statements to Detective Bruce with him. (R.pp. 329, 336-338). Petitioner also testified that he did not believe his counsel was prepared for trial, and complained that his jury consisted of all whites with a black alternate juror who was not allowed to discuss anything with the jury. (R.pp. 330-331).[5] Petitioner testified that he expressed his concern about the jury composition to his counsel. (R.p. 332). Petitioner also testified that "other people" had been to talk to his counsel, and that his mother gave his counsel names of witnesses to contact, but that his counsel threatened to have her arrested. (R.pp. 347, 350). However, when asked who these witnesses were and what they talked to his counsel about, Petitioner could only recall one of the witnesses' name and did not know what she would have told his counsel or what her testimony would have been. (R.p. 350).

Petitioner's counsel testified at the PCR hearing that he was appointed to represent Petitioner on this charge after two prior appointed attorneys, who Petitioner was not satisfied with, had been relieved. (R.pp. 298, 322). He testified that when he received the appointment, the case was coming up very soon for trial, but that he got the discovery material fairly quickly and reviewed

---

[5]Petitioner testified that he was concerned about the all white jury because he was in jail for murdering a white 14 year-old child. (R.p. 332). However, his murder charge was not tried jointly with his armed robbery charge.



11

the Rule 5 Brady material with the Petitioner and discussed the case "thoroughly" with him.  (R.pp. 299-300, 322, 326).  Counsel also testified that he met with the Petitioner, who he was also appointed to represent on a murder charge, but that when he would meet with Petitioner to discuss the armed robbery charge, Petitioner would want to talk about the murder charge.  Even so, counsel testified that he was prepared for trial.  (R.p. 300).  Although counsel testified that he did not recall visiting the scene, he was familiar with the area where it occurred, and he testified that he met with Petitioner, met with the Solicitor, reviewed the file, studied the case file, prepared notes, and was prepared for trial.  (R.p. 301).

Counsel also testified that he did not think there were any witnesses, and that while Petitioner told him that he met an older guy at the house, they could not locate that person.  (R.pp. 301-302).  Counsel testified that with regard to the jury, that he did not believe that a <u>Batson</u> motion was necessary at the time and that he did not have an issue with the jury as constituted.  (R.pp. 307-308).  Counsel testified that he could not recall whether there were even any potential black jurors who were struck, but if there were any black members stricken, he was pretty sure that the Solicitor had a race neutral reason for doing so.  (R.pp. 308-309).  Counsel also testified the defense theory was there was a drug deal where certain individuals believed that Petitioner got something over on them so they claimed to have been robbed, and that he "essentially tried to use the State's witnesses to help make my case" that it didn't happen the way the witnesses claimed.  (R.pp. 309-311).

With regard to Allen Martin's testimony about a prior written statement and whether he should have moved for a mistrial because the Solicitor's notes from that conversation had not been provided, counsel testified that he thought about it and decided that the better defense strategy was to not move for a mistrial, because he felt that he successfully challenged Martin's credibility, that



Martin's credibility had been shattered at that point, and the Judge had dealt with the issue by a stipulation that there was no written statement. (R.pp. 314-318, 324). As for Detective Bruce, counsel testified that Petitioner had called Detective Bruce and "essentially and somewhat confessed to the crime. And discussed the case with Mr. Bruce." (R.p. 323). Counsel testified that he discussed with the Petitioner the impact of those statements on his case and attempted unsuccessfully to challenge those statements. (R.pp. 323, 326).

As previously noted, the PCR court found Petitioner's counsel credible and that Petitioner was not credible. The PCR court's findings are entitled to substantial deference on habeas corpus review, and while a district court may, in an appropriate case, reject the factual findings and credibility determinations of a state court; Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); the district court may not substitute its own credibility determinations for those of the state court simply because it disagrees with the state court's findings (assuming that were to be the case). See Pondexter v. Dretke, 346 F.3d 142, 147-149 (5th Cir.2003)[finding that the district court "failed to afford the state court's factual findings proper deference" by "rejecting the state court's credibility determinations and substituting its own views of the credibility of witnesses."]. Further, given the deference due the state court's finding on this credibility issue, Petitioner has not shown that the state court's finding was unreasonable under § 2254(d), nor has Petitioner overcome the presumption accorded to the PCR court's findings. Evans, 220 F.3d at 312. See Seymour v. Walker, 224 F.3d 542, 553 (6th Cir.2000)["Given the credibility assessment required to make such a determination and the deference due to state-court factual findings under AEDPA, we cannot say that the trial court's finding was unreasonable under § 2254(d)(2)."]; Marshall v. Lonberger, 459 U.S. 422, 434 (1983)["28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose



demeanor has been observed by the state trial court ..."].  The PCR court found that Petitioner failed to present any compelling evidence that his trial was prejudiced as the result of inadequate preparation by trial counsel, and there is nothing reversible in these findings based on the record of this case.  Evans, 220 F.3d at 312.  Petitioner has therefore failed to meet his burden of proving trial counsel failed to render reasonably effective assistance.  Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]; see also Wade v. State, 419 S.E.2d 781, 782 (S.C. 1992)["Court must uphold the findings of the PCR judge if such findings are supported by any evidence"].

Critically, Petitioner did not produce any witnesses in either his PCR proceedings or as part of this federal habeas petition, so there has been no establishment of what their testimony would have been.  At his PCR hearing, he could only give the name of one potential witness but conceded that he did not know what she could have offered as testimony.  (R.p. 350).  Therefore, Petitioner has failed to establish the prejudice necessary to succeed on this claim.  Bassette v. Thompson, 915 F.2d 932, 940- 941 (4th Cir.1990); cf. Bannister v. State, 509 S.E.2d 807, 809 (S.C.1998) ["This Court has repeatedly held a PCR applicant *must* produce the testimony of a favorable witness *or otherwise offer the testimony in accordance with the rules of evidence* at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial."]; Underwood v. State, 425 S.E.2d 20, 22 (S.C. 1992)[prejudice from trial counsel's failure to interview or call witnesses cannot be shown where the witnesses do not testify at post-conviction relief]; Glover v. State, 458 S.E.2d 539, 540 (S.C.1995)["[B]ecause the other witnesses respondent claimed could have provided an alibi defense did not testify at the PCR hearing, respondent could not establish any prejudice from counsel's failure to contact these witnesses."]; Clark v. State, 434 S.E.2d 266,

14



267–268 (S.C.1993) [pure conjecture as to what a witness' testimony would have been is not sufficient to show a reasonable probability the result at trial would have been different]. Even if Petitioner contends that this testimony was not presented at his PCR hearing because of his PCR counsel's ineffectiveness, he has still failed to offer any such evidence or testimony now as part of this federal petition. Accordingly, Petitioner has failed to show deficient performance or prejudice on counsel's part for failure to call witnesses. Smith, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus]; see generally Bassette, 915 F.2d at 940-941 [Petitioner's allegation that attorney did ineffective investigation does not support relief absent proffer of the supposed witness's favorable testimony].

       With regard to the statement by Alvin Martin where he misspoke about having given a prior written statement, counsel testified that he considered moving for a mistrial, but that after he took time to consider it, he believed that Martin's credibility had been shattered, and the Judge had addressed it, so he made the strategic decision to proceed without moving for a mistrial on that basis. (R.pp. 314-315). Counsel also testified that he did not believe it was critical to Petitioner's defense to move for a continuance based on certain statements that were produced apparently immediately prior to trial. (R.pp. 305-306). Petitioner has not produced any evidence that could have affected the outcome of his trial by counsel requesting a continuance due to those statements. Further, regarding the issue of the all white jury, counsel testified that he believed that the solicitor had race neutral reasons for striking any black jurors and therefore did not believe that a Batson motion was necessary. (R.pp. 307-308). Although Petitioner points out that the jury was all white in this case while he is an African-American, he has offered no evidence to show that there was any basis for a successful Batson charge in this case. Petitioner needs to show that blacks were excluded from the jury for

15



discriminatory reasons.  However, there is nothing in the evidence to show why any juror was struck, or even what race those jurors were.  <u>See</u> (R.pp. 401-402).  <u>See also</u> <u>Smith</u>, 528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

Although Petitioner speculates that if his counsel would have moved for a continuance prior to trial, made a <u>Batson</u> challenge, or moved for a directed verdict, that would have affected the outcome of the case, these conclusory and self-serving claims are insufficient to show his counsel was ineffective.  While the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel. <u>Strickland</u>, 466 U.S. at 689.  There is a strong presumption that counsel's conduct during trial was within the wide range of reasonable professional assistance, and this Court should not scrutinize counsel's performance by looking at the decisions made in an after the fact manner. <u>Id</u>. at 688-689; <u>Bunch v. Thompson</u>, 949 F.2d 1354 (4th Cir. 1991), <u>cert. denied</u>, 505 U.S. 1230 (1992); <u>Horne v. Peyton</u>, 356 F.2d 631, 633 (4th Cir. 1966), <u>cert. denied</u>, 385 U.S. 863 (1966); <u>Burger v. Kemp</u>, 483 U.S. 776 (1987); <u>see also</u> <u>Harris v. Dugger</u>, 874 F.2d 756, 762 (11th Cir. 1989), <u>cert. denied</u>, 493 U.S. 1011 (1989) [An informed decision by trial counsel should not be second guessed by a reviewing court.].  The PCR judge found counsel had a reasonable trial strategy based on the facts and the evidence in this case, and the undersigned can find no reversible error in this record.

Nor has Petitioner shown the necessary prejudice with regard to this claim. <u>Evans</u>, 220 F.3d at 312; <u>Williams v. Taylor</u>, <u>supra</u>; <u>Strickland v. Washington</u>, <u>supra</u>.  Substantial evidence of Petitioner's guilt was presented.  Petitioner basically confessed to Detective Bruce; (R.pp. 196-198); and counsel testified that he and Petitioner discussed this conversation and the effect that it would

16



have on his defense.  (R.pp. 323, 326).  Further, the victim knew the Petitioner prior to the robbery

and testified at trial.  (R.pp. 98-107).  The victim made both a photographic identification and an in

court identification of the Petitioner.  (R.pp. 110-115).  A witness to the robbery also testified and

identified the Petitioner.  (R.p. 141).

Accordingly, Petitioner has failed to present evidence sufficient to show that the state

court's rejection of these claims was unreasonable.  <u>Evans</u>, 220 F.3d at 312 [Federal habeas relief will

not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision

that was contrary to, or involved an unreasonable application of, clearly established federal law or

resulted in a decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding]; <u>Bell</u>, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1)

[determination of a factual issue by the state court shall be presumed correct unless rebutted by clear

and convincing evidence].  These claims are without merit and should be dismissed.

## II.

### (Ground Two)

In Ground Two, Petitioner asserts that he was denied a fair and impartial trial because

he had an all white jury.  Respondent contends that Petitioner failed to raise this issue on direct appeal

or in his PCR proceedings, and a review of Petitioner's direct appeal and PCR petition confirms that

he failed to raise this issue in those proceedings.  <u>See</u> (R.p. 286); <u>See</u> Court Docket No. 18-3, p. 4.

While Petitioner did raise an *ineffective assistance of counsel* claim in his APCR based on his

counsel's failure to object to an all white jury, Petitioner did not raise this issue in either his direct

appeal or his PCR proceeding as a freestanding claim.    Therefore, Petitioner did not properly

preserve the underlying issue as a separate claim.  <u>Joseph v. Angelone</u>, 184 F.3d 320, 328 (4th Cir.



1999), cert. denied, 528 U.S. 959 (1999)"In order to avoid procedural default, the 'substance' of [the] claim must have been 'fairly presented' in state court.... That requires 'the ground relied upon [to] be presented face-up and squarely. Oblique references which hint that a theory may be lurking in the woodwork will not turn the trick.] (quoting Townes v. Murray, 68 F.3d 840, 846 (4th Cir.1995) (quoting Mallory v. Smith, 27 F.3d 991, 995 (4th Cir.1994)).

Since Petitioner did not properly pursue this underlying claim in his state court proceedings, it is barred from further state collateral review; Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n. 3 (1971); Wicker v. State, 425 S.E.2d 25 (S.C. 1992); Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue this issue, it is fully exhausted.  Coleman v. Thompson, 501 U.S. 722, 735, n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the  petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.



However, even though otherwise exhausted, because this issue was not pursued and exhausted by the Petitioner in state court, federal habeas review of this claim is now precluded absent a showing of cause and prejudice, or actual innocence.  Martinez v. Ryan, 565 U.S. ___, ___, 132 S.Ct. 1309, 1316 (2012); Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

Petitioner does not argue any "cause" for having defaulted this issue, as he contends that the issue was presented and exhausted in his PCR proceeding.  See Response to Motion to Dismiss, p. 33.  However, as previously discussed, the issue before the PCR court was whether his counsel was ineffective for failing to properly object to the jury's all white composition, *not* the underlying issue itself.  Even so, to the extent that Petitioner intended to pursue this issue as an ineffective assistance of counsel claim, the undersigned has addressed it on the merits.  See discussion, infra. With regard to Petitioner pursuing this issue as an independent claim, however, that claim is procedurally barred for the reasons discussed hereinabove.  Therefore, Petitioner has failed to show cause for his procedural default of this issue.  Rodriguez v. Young, 906 F.2d 1153, 1159 (7th Cir. 1990), cert. denied, 498 U.S. 1035 (1991) ["Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."].

Nor does the undersigned find that Petitioner has met his burden of showing actual



innocence, or that a fundamental miscarriage of justice will occur if this claim is not considered. Cognizable claims of "actual innocence" are extremely rare and must be based on "factual innocence not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998); see also Doe v. Menefee, 391 F.3d 147 (2d Cir. 2004). Petitioner has failed to present any new, reliable evidence of any type that was not presented in any of his prior court proceedings which supports his innocence on the criminal charges on which he was found guilty. See Schlup v. Delo, 513 U.S. 298, 324 (1995)[to present a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."]; Doe, 391 F.3d at 161 (quoting Schlup for the evidentiary standard required for a court to consider an actual innocence claim). Further, Petitioner has also failed to make any showing that a fundamental miscarriage of justice will occur if his defaulted claim is not considered. Wainwright v. Sykes, supra; Murray v. Carrier, 477 U.S. 478 (1986); Rodriguez, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing Murray v. Carrier, 477 U.S. at 496); Sawyer v. Whitley, 505 U.S. 333, 348 (1992); Bolender v. Singletary, 898 F.Supp. 876, 881 (S.D.Fla. 1995).

Therefore, Ground Two is procedurally barred from consideration by this Court, and must be dismissed.

### **Conclusion**

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

20



The parties are referred to the Notice Page attached hereto.



_____
Bristow Marchant
United States Magistrate Judge

August 24, 2015
Charleston, South Carolina

### Notice of Right to File Objections to Report and Recommendation


The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

